UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

THOMAS K. KURIAN, an individual,

        Plaintiff,

v.

SNAPS HOLDING COMPANY, a North Dakota domestic corporation,

        Defendant.

Case No. 2:19-cv-01757-GMN-EJY

**REPORT AND RECOMMENDATION
RE:  ECF No. 31
RENEWED MOTION FOR LEAVE
TOAMEND COMPLAINT
TO ADD PARTIES**

Pending before the Court is Plaintiff's Renewed Motion for Leave to Amend Complaint to Add Parties.  ECF No. 31.  The Court has considered Plaintiff's Motion, Defendant SNAPS Holding Company's ("SNAPS") Response (ECF No. 33), and Plaintiff's Reply (ECF No. 35).

## I.    BACKGROUND

This case commenced in the Eighth Judicial District Court for Clark County, Nevada, in June 2019, and was subsequently removed to this Court based on diversity jurisdiction.  Plaintiff previously filed a Motion for Leave to Amend his Complaint (ECF No. 18).  Plaintiff's proposed First Amended Complaint sought to add IDA of Moorhead Corporation ("IDA") as a defendant based on the allegation that IDA is the alter ego of SNAPS.  The Court denied Plaintiff's Motion without prejudice because Plaintiff failed to assert sufficient facts to support his alter ego claim. ECF No. 28 at 4-5.  Plaintiff's instant Motion seeks leave to file a second amended complaint (the "Proposed SAC") that would add IDA as a defendant, which is again based on IDA's alleged status as the alter ego of SNAPS.

Facts asserted by Plaintiff in the Proposed SAC supporting his alter ego allegation are as follows:

- Kurian and SNAPS executed a Spectrum Manager Lease Agreement (the "Agreement") in May 2014.  ECF No. 31-1 ¶ 8;

- "SNAPS and IDA are owned and controlled by the same persons."  *Id*. ¶ 11;

- "While it is true that IDA was not a party to the agreement between Kurian and SNAPS, Paragraph 14 of the parties' agreement prohibited any type of assignment or

1

transfer, directly or indirectly[,] in whole or in part[, of] its rights or obligations … to any entity without the prior written consent of" Plaintiff. *Id.*

- "Sanjay Patel is the President of SNPAS. *Id.*;

- "Daivesh Sanghvi is the Vice President of SNAPS." *Id.*;

- "IDA is controlled by Mr. Sanghvi and Mr. Patel." *Id.*;

- Mr. Patel and Mr. Sanghvi instructed Steve Lee, the Director of IDA, to develop and test wireless transmitters without the permission of Kurian or … FCC authorization on the leased spectrum from Kurian." *Id.*;

- "Kurian visited the site … where the receiver was installed and the owner of the location[,] John Grazzo[,] confirmed that Steve Lee … was instructed by Patel and Sanghvi to install the illegal receiver … . *Id.*;

- "SNAPS and IDA operated Permanent Stations … potentially causing interference to TV Channel 13 and 10 creating potential legal liabilities for Kurian." *Id.*;

- "Upon information and belief, Mr. Patel and Mr. Sanghvi own SNAPS and IDA. *Id.*; and,

- IDA and SNAPS operated "Permanent Stations" without FCC engineering studies or FCC approval. *Id.*

The causes of action that follow these factual allegations include: (1) Breach of Contract (ECF No. 31-1 ¶¶ 13-14), to which Plaintiff admits IDA is not a party (*id.* ¶ 11); (2) Fraud and Misrepresentation against SNAPS (*id.* ¶¶ 17-18 referencing SNAPS' alleged conduct); (3) Interference with Prospective Economic Gain against SNAPS (*id.* ¶ 22); (4) Breach of the Covenant of Good Faith and Fair Dealing against SNAPS (*id.* ¶ 28); (5) Declaratory Relief that "there is a valid and enforceable agreement between Plaintiff and Defendant" that is "void for fraud in the inducement" (*id.* ¶ 32); (6) Injunctive Relief that "breach of the agreement and conversion of use of" Kurian's frequencies "is in contravention of the … parties' agreement" that should be "immediately and permanently" enjoined "against Defendant or those acting under Defendant's control, direction or authority …" (*id.* ¶ 36); and, (7) Alter Ego Piercing the Corporate Veil alleging that "IDA is controlled by Sanjay Patel and Daivesh Sanghvi" who are President and Vice President of SNAPS, which they "own and control" (*id.* ¶ 38), that Patel and Sanghvi directed "Lee (Director of IDA) to install and test Spectrum leased to SNAPS without Kurian's permission per the parties' contractor [sic] or FCC permission" (*id.* ¶ 39), and that these facts, together with all facts asserted under the

1   header "Facts Common to all Causes of Action," show that "to adhere to the fiction of a separate

2   entity would sanction a fraud or promote injustice." *Id*. ¶ 40.

3        In response to the Motion to Amend, SNAPS argues that Plaintiff fails to assert sufficient

4   facts to support his alter ego theory of relief against IDA.  ECF No. 33.  Citing to the elements of

5   piercing the corporate veil as an equitable remedy identified under Nevada law, SNAPS states that

6   Plaintiff's allegations are insufficient to state the elements of an alter ego claim.  SNAPS argues

7   Plaintiff's allegations are legal conclusions and that Plaintiff's alter ego claim is futile.  SNAPS also

8   states that it will be prejudiced by an amendment that adds IDA as a defendant because this will

9   expand the scope of the litigation "without a basis for doing so in fact or law." *Id*.

10       On Reply, Plaintiff reiterates and quotes the allegations contained in the Proposed SAC (ECF

11  No. 35 at 2-3), and argues that "SNAPS is actively breaching the Agreement by directing a <u>supposed</u>

12  <u>third-party, IDA</u>, to interfere with the Agreement."  *Id*. at 3 (citing 31-1 ¶¶ 11, 38-39) (emphasis in

13  original).  Plaintiff goes on to state that the Agreement between Plaintiff and SNAPS does not allow

14  for an assignment, was confidential (conditions allegedly breached by SNAPS), and that IDA is

15  interfering with radio frequencies that were only to be used by SNAPS.  *Id*. at 4.  Plaintiff states in

16  his Motion, but not in his Proposed SAC, that "SNAPS would not credibly seek to breach the

17  Agreement through the actions of a supposed third-party unless it exerted actual dominion, influence

18  and control over such supposed third-party, *i.e.* IDA."  *Id*.  Plaintiff concludes that SNAPS directed

19  IDA to engage in conduct that is contrary to the terms of the Agreement it has with SNAPS, SNPAS

20  and IDA are controlled and owned by the same individuals, and IDA's conduct, "<u>unchecked by</u>

21  <u>SNAPS</u>," puts Plaintiff's FCC licenses in danger.  *Id*. (Emphasis in original.)

22  **II.    DISCUSSION**

23       A.    <u>The Standard Applicable to a Motion to Amend</u>.

24       Rule 15(a)(2) of the Federal Rules of Civil Procedures provides that the court may grant a

25  party leave to amend its pleading that should be freely granted "when justice so requires."  The

26  policy underlying this Rule "'to be applied with extreme liberality.'"  *Eminence Capital, LLC v.*

27  *Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citing *Owens v. Kaiser Found. Health Plan, Inc.*,

28  244 F.3d 708, 712 (9th Cir. 2001)).  Despite this liberal policy, leave to amend may be denied

1    because of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies through

2    previously permitted amendments, undue prejudice or futility. *Id.* at 1052 (citing *Foman v. Davis*,

3    371 U.S. 178, 182 (1962)). Absent prejudice, or a strong showing under any of the remaining *Foman*

4    factors, a presumption exists in favor of granting leave to amend. *Id.*

5          With respect to the instant Motion, the parties do not discuss any of the *Foman* factors except

6    for a short presentation on prejudice by SNAPS, and a more in depth discussion of futility. A

7    proposed amended complaint is futile when no set of facts can be proven "under the amendment to

8    the pleadings that would constitute a valid and sufficient claim or defense." *Doe v. Nevada*, 356 F.

9    Supp. 2d 1123, 1125 (D. Nev. 2004) (citation omitted); *see generally* 3 J. Moore, Moore's Federal

10    Practice ¶ 15.08[4] (2d ed. 1974) (the test to be applied when determining the legal sufficiency of a

11    proposed amendment is identical to the one used when considering the sufficiency of a pleading

12    challenged under Rule 12(b)(6)).

13          B.    The Fed. R. Civ. P. 12(b)(6) Standard.

14          A properly pleaded claim must include "[a] short and plain statement of the claim showing

15    that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

16    While Federal Rule of Civil Procedure 8 does not require detailed factual allegations, the Rule

17    demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of

18    action." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). "Factual allegations must

19    be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus,

20    to state a claim and survive a motion to dismiss, the complaint must allege sufficient facts to "state

21    a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

22          In *Iqbal,* the Supreme Court outlined the two-step approach district courts apply when

23    considering motions to dismiss—that is, whether a party has stated a claim upon which relief may

24    be granted. First, the Court must accept as true all well-pled factual allegations in the complaint,

25    while legal conclusions are not entitled to the same assumption of truth. *Id.* Mere recitals of the

26    elements of a cause of action, supported only by conclusory statements, are insufficient to meet this

27    standard. *Id.* Second, the Court must consider whether the factual allegations in the complaint allege

28    a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint

alleges facts that allows the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief." *Id.* at 679 (internal quotations and alterations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.2011).

C.    Plaintiff's Proposed SAC Alleges Insufficient Facts to Survive a 12(b)(6) Motion on his Alter Ego Claim and, for this Reason, Plaintiff's Motion to Amend Should be Denied.

Plaintiff's Proposed SAC seeks to add IDA as a defendant in the instant matter based solely on the contention that IDA is the alter ego of SNAPS. To state that an alter ego relationship exists, a party must plead that: (1) a corporation is influenced and governed by the alleged alter ego; (2) there is such unity of interest and ownership that one is inseparable from the other; and, (3) adherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice. Nev. Rev. Stat. 78.747(2); *Lorenz v. Beltio Ltd.*, 963 P.2d 488, 496 (Nev. 1998). The Nevada Supreme Court has articulated several factors that may indicate a unity of interest and ownership between two entities including commingling of funds, undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the entity's own, and failure to observe corporate formalities. *Mallard Auto. Group, Ltd. v. LeClair Mgmt. Corp.*, 153 F.Supp.2d 1211, 1214 (D.Nev.2001) (citing *Lorenz,* 963 P.2d at 497). While such factors may indicate an alter ego relationship, no one factor is determinative. *Id.* (citing *Lorenz,* 963 P.2d at 497). "Where the alter ego doctrine applies, ... the two corporations are treated as one for purposes of determining liability." *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1490 (9th Cir. 1983). However, "[t]here is no litmus test for determining when the corporate fiction should be disregarded; the result depends on the circumstances of each case." *Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 887 (Nev. 1987). The individual circumstances and interests of justice control. *LFC Mktg. Group, Inc. v. Loomis*, 8 P.3d 841, 847 (Nev. 2000). And, because no one factor is determinative, a court's inquiry is fact intensive and must rely heavily on the particular circumstances of each case. *Mesler v. Bragg Mgmt. Co.*, 702 P.2d 601, 606 (Cal. 1985). Moreover, "fraud or other wrongful purpose

need not be proven." *SEC v. Elmas Trading Corp.*, 620 F.Supp. 231, 233 (D. Nev. 1985). It is sufficient to show recognizing the separate corporate existence would bring about an inequitable result. *Id.*; *see also Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1116 (C.D. Cal. 2003) (the alter ego doctrine "arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests").

Here, Plaintiff alleges sufficient facts, at the pleading stage, to demonstrate that IDA and SNAPS share common ownership. ECF No. 31-1 ¶¶ 6, 11, 38. Plaintiff also sufficiently alleges that IDA was influenced by SNAPS as stated in paragraphs 11 and 39 of the Proposed SAC. *Id.* ¶¶ 11, 39. To this end, Plaintiff alleges that the President and Vice President of SNAPS, Messrs. Patel and Daivesh, instructed Steve Lee ("Lee"), the Director of Engineering at IDA, "to develop and test wireless transmitters" on the spectrum leased by SNAPS from Plaintiff without Plaintiff's permission. *Id.* ¶ 11. Plaintiff alleges that an illegal receiver was installed by Lee, as directed by Patel and Sanghvi, IDA "refused to stop transmitting and remove the receiver," and SNAPS and IDA operated "Permanent Stations without" FCC approval putting Plaintiff's licenses at risk. *Id.* These factual allegation sufficiently allege that there was one series of events evidencing that SNAPS directed IDA to act in contravention of the terms of the Agreement between Plaintiff and SNAPS. However, Plaintiff's allegations do not demonstrate that SNAPS exercises complete control of IDA. And, Plaintiff merely concludes that applying the corporate fiction of separateness to these entities would result in fraud or promote injustice. *Id.*, *comparing* ¶¶ 8-11 *and* ¶¶ 38-40.

Based on the foregoing, the Court finds Plaintiff fails to plead sufficient facts to state a claim based on the alter ego doctrine. Nevada Supreme Court case law holds that "[a] mere showing that one corporation is owned by another, or that the two share interlocking officers or directors is insufficient to support a finding of alter ego." *Bonanza Hotel Gift Shop, Inc. v. Bonanza No. 2*, 596 P.2d 227, 229 (Nev. 1979) *citing Lipshie v. Tracy Investment Co.*, 566 P.2d 819 (1977). "Nor is mere mutuality of interest sufficient to make such a showing, without evidence of a commingling of funds or property interests, or of prejudice to creditors." *Id. citing First Nat. Bank v. Walton*, 262 P. 984 (Wash. 1928). While Plaintiff pleads sufficient facts to state common ownership and that IDA was influenced by SNAPS, Plaintiff's example of conduct by Lee does not demonstrate SNAPS'

complete control of IDA, sufficient mutuality of interests or that adherence to the corporate separateness of these entities would promote injustice.  *G.O. America Shipping Company, Inc. v. China COSCO Shipping Corporation Limited*, 764 Fed.Appx. 629 (9th Cir. 2019) ("We have held that corporate separateness is to be respected and that piercing the corporate veil requires that the controlling corporate entity exercise total dominion over the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interest of its own.") (internal citations and quote marks omitted).

In sum, SNAPS may have breached its contract with Plaintiff, may share common ownership with IDA, and may have used IDA to supposedly test and install an illegal receiver, but this does not establish IDA and SNAPS are alter egos.  "[T]he corporate cloak will not be lightly cast aside." *Wyatt v. Bowers*, 747 P.2d 881, 883 (Nev. 1987) (internal citation omitted).  As reiterated by the Nevada Supreme Court in 1983, "the facts must be such that adherence to the fiction of a separate entity would, under the circumstances, sanction a fraud or promote injustice."  *Rowland v. Lepire*, 662 P.2d 1332, 1337 (Nev. 1983) (internal citation omitted).  The factual allegations made in the Proposed SAC simply fail to plead what injustice will occur if IDA is not deemed to be the alter ego of SNAPS.  There is nothing more than the conclusory allegation that adherence to the separateness of IDA and SNAPS would be tantamount to sanctioning fraud or promoting injustice.  ECF No. 31-1 ¶¶ 38-40.  This is insufficient to state an alter ego claim.  *Hall v. High Desert Recycling*, Case No. 03:11-cv-00137-LRH, 2011 WL 2600483, at *4 (D. Nev. June 29, 2011).[1]

---

[1]    The Court does not reach Defendant's prejudice argument because the Motion to Amend is denied based on Plaintiff's failure to state a claim under his alter ego theory for relief.

## III. CONCLUSION

Accordingly,

IT IS HEREBY RECOMMENDED that Plaintiff's Renewed Motion for Leave to Amend Complaint to Add Parties (ECF No. 31) be DENIED without prejudice so that Plaintiff may file a second renewed motion to amend if Plaintiff discovers new facts that support all elements necessary to state an alter ego claim.

Dated this 20th day of August, 2020

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).