# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| THOMAS K. KURIAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:19-cv-01757-GMN-EJY |
| vs. | ) | |
| | ) | **ORDER** |
| SNAPS HOLDING COMPANY, | ) | |
| | ) | |
| Defendant, | ) | |
| _____ | ) | |
| SNAPS HOLDING COMPANY, | ) | |
| | ) | |
| Counterclaimants, | ) | |
| vs. | ) | |
| | ) | |
| THOMAS K. KURIAN, | ) | |
| | ) | |
| Counter-defendant. | ) | |
| _____ | ) | |

Pending before the Court is Plaintiff Thomas Kurian's ("Plaintiff's") Motion for Summary Judgment, (ECF No. 38).  Defendant SNAP Holding Company ("Defendant") filed a Response, (ECF No. 40), to which Plaintiff filed a Reply, (ECF No. 42).

Also pending before the Court is Defendant's Motion for Partial Summary Judgment, (ECF No. 43).  Plaintiff filed a Response, (ECF No. 45), to which Defendant filed a Reply, (ECF No. 46).

For the reasons discussed below, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion for Summary Judgment and **GRANTS in part and DENIES in part** Defendant's Motion for Summary Judgment.

//

//

## I.   <u>BACKGROUND</u>

This case arises out of an alleged breach of contract between Plaintiff and Defendant, in which Plaintiff leased its wireless radio frequency license, WQCP809, (the "License") to Defendant in exchange for a monthly payment of $20,390.00. (Compl. ¶ 5, Ex. A to Pet. Removal, ECF No. 1-1).

On May 19, 2014, Plaintiff and Defendant executed a Spectrum Manager Lease Agreement (the "Agreement"). (*Id.*).  In addition to leasing Plaintiff's License, Defendant agreed to comply with FCC regulations and to provide "substantial service by providing communication services to 40% of the Population in the leased geographical area." (*Id.*); (*see also* Spectrum Agreement at 109, Ex. 1 to Decl. of Brent Bryston ("Bryston Decl."), ECF No. 39-1).  Plaintiff alleges that Defendant breached two main provisions of the Agreement—the build out of the leased frequency channel and timely payment. (*See* Compl. ¶ 5).

### A.  Build Out of Leased Channels

Plaintiff alleges that, as part of providing communication services, Defendant was expected to build out the portion of frequencies leased to Defendant and only use equipment approved by the FCC. (*Id.*).  Failure to timely build out the License could result in cancellation of the License by the FCC. (*Id.*).

In June 2016, Plaintiff reiterated the specifications of the build out to Sanjay Patel ("Patel"), President of SNAPS Holding Company. (*See* E-mail from Plaintiff to Patel (June 6, 2016, 10:49 AM), Ex. 9 to Bryston Decl., ECF No. 39-9).  Patel indicated that he was waiting until the FCC approved the lease before starting construction. (*See* E-mail from Patel to Plaintiff (June 5, 2016, 5:26 AM), Ex. 9 to Bryston Decl., ECF No. 39-9).  On November 2, 2016, Patel emailed Plaintiff an update on the site lease and construction, promising that he intended to install the equipment for six (6) sites in different locations once he received the

equipment. (*See* E-mail from Patel to Plaintiff (November 2, 2016, 1:06 PM), Ex. 7 to Bryston Decl., ECF No. 39-7).  Patel provided a second update, on December 24, 2016, stating:

> The gear has been received by our office in Fargo for 6 sites - We are in contact with the site owners/installers in El Paso, Phoenix, Tucson areas - We are also ln touch with the site owners in Denver, Colorado Springs, Salt Lake City areas for installations as soon as weather permits them to climb the towers.

(*See* E-mail from Patel to Plaintiff (December 24, 2016, 3:42 PM), Ex. 8 to Bryston Decl., ECF No. 39-8).

### B.  Timely Payment

Plaintiff further alleges that Defendant failed to make timely payments. (Compl. ¶ 5). Beginning in July 2014, Plaintiff sent multiple email reminders to Defendant requesting payment. (*See* Table of Payment, Ex. 12 to Bryston Decl., ECF No. 39-12).  On multiple occasions, Plaintiff could not process Defendant's check due to insufficient funds. (Compl. ¶ 5).

As a result of these deficiencies, Plaintiff notified Defendant via email on March 20, 2019, that he intended to cancel the Agreement and initiate a suit for breach of contract. (*See* E-mail from Plaintiff to Patel (March 20, 2019, 12:09 PM), Ex. 14 to Bryston Decl., ECF No. 39-14).  A week later, Plaintiff sent Defendant via facsimile and Certified Mail, a "Termination of Spectrum Manger [sic] Lease Agreement." (Termination of Agreement at 4383, Ex. 10 to Bryston Decl., ECF No. 39-10).  The parties tried to informally resolve their issues; however, were unable to reach an agreement. (Compl. ¶ 5).

On June 27, 2019, Plaintiff accordingly filed a Complaint in the Eighth Judicial District Court, alleging the following causes of action: (1) breach of contract; (2) fraud/misrepresentation; (3) interference with prospective economic gain; (4) breach of the covenant of good faith and fair dealing-contractual; (5) declaratory relief; and (6) injunctive relief. (*Id*. ¶¶ 6–30).  Defendant thereafter removed the case to this Court on the basis of

1  diversity jurisdiction. (*See* Pet. Removal ¶ 5).  Defendant filed an Answer, which it later

2  amended to include seven counterclaims, namely: (1) breach of contract; (2) unjust enrichment;

3  (3) fraudulent misrepresentation; (4) negligent misrepresentation; (5) fraudulent inducement;

4  (6) breach of covenant of good faith and fair dealing; and (7) tortious interference with

5  prospective economic advantage. (*See* Am. Answer ¶¶ 22–70, ECF No. 30).  Plaintiff and

6  Defendant then filed their cross-motions for summary judgment, (ECF Nos. 38, 43).

7  **II.   LEGAL STANDARD**

8       The Federal Rules of Civil Procedure provide for summary adjudication when the

9  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

10  affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

11  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

12  may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

13  (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on

14  which a reasonable fact-finder could rely to find for the nonmoving party. *See id.*  "The amount

15  of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or

16  judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*,

17  718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253,

18  288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all

19  inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's

20  favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United

21  States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary

22  judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*,

23  477 U.S. 317, 323–24 (1986).

24       In determining summary judgment, a court applies a burden-shifting analysis.  "When

25  the party moving for summary judgment would bear the burden of proof at trial, it must come

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the

1  nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations

2  that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

3  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set

4  forth specific facts by producing competent evidence that shows a genuine issue for trial. *See*

5  *Celotex Corp.*, 477 U.S. at 324.

6        At summary judgment, a court's function is not to weigh the evidence and determine the

7  truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

8  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

9  in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is

10  not significantly probative, summary judgment may be granted. *See id*. at 249–50.

11  **III.**   **DISCUSSION**

12        Plaintiff and Defendant file cross-motions for summary judgment.  Plaintiff seeks

13  summary judgment regarding all of his claims except for his fourth claim for interference with

14  prospective economic gain.[1] (Pl.'s Mot. Summ. J. ("Pl.'s MSJ") at 6–19, ECF No. 38).

15  Defendant, in its Motion for Summary Judgment, moves for summary judgment on all claims

16  and Defendant's crossclaim for breach of contract. (Def.'s Mot. Summ. J. ("Def.'s MSJ") at 8–

17  15, ECF No. 43)   The Court discusses each claim and the counterclaim in turn.

18       **A.  Claim 1: Breach of Contract**

19        Plaintiff first moves for summary judgment as to his breach of contract claim.  (Pl.'s

20  MSJ 6:14–7:28).  Specifically, he argues that a valid contract exists, Defendant breached the

21  contract by failing to perform its assigned duties and obligations under the Agreement and, as a

22  result, Plaintiff sustained damages. (*Id*. 7:20–27).  In response, Defendant argues that the

23  Agreement is invalid because the parties did not have adequate consideration and the parties

24

25

---

[1] Given Plaintiff's voluntary dismissal of his claim, the Court dismisses Plaintiff's fourth claim for interference with prospective economic gain. (*See* Pl.'s MSJ 9:1–2).

did not mutually assent to the terms of the contract. (Resp. to Pl.'s MSJ 6:15–7:5, ECF No. 40). Even assuming the Agreement is valid, Defendant contends that SNAPS performed its obligations and otherwise cured any deficiencies. (*Id*. 7:6–17).

A claim for breach of contract must allege (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the terms of the contract; and (4) that the plaintiff was damaged as a result of the breach. *See* Restatement (Second) of Contracts § 203 (2007); *Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259, 1263 (Nev. 2000) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement."). An enforceable contract requires: (1) an offer and acceptance, (2) meeting of the minds, and (3) consideration. *May v. Anderson*, 121 Nev. 668, 119 P.3d 1254, 1257 (Nev. 2005). The Court first considers whether the Agreement is valid.

### i.  Consideration

Defendant argues that the Agreement is unenforceable because it lacks adequate consideration. (Resp. to Pl.'s MSJ 7:2–5). Under Nevada law, "[c]onsideration is the exchange of a promise or performance, bargained for by the parties." *Jones v. Suntrust Mortg., Inc.*, 128 Nev. 188, 191, 274 P.3d 762, 764 (2012). Here, Plaintiff agreed to lease its License to Defendant in exchange for a monthly payment of $20,390.00. (*See* Spectrum Agreement at 108–109). The parties made additional promises relating to the lease and usage of Plaintiff's license, specifically concerning FCC compliance, an option to purchase, commencement of operations, construction, inspections, and termination. (*See id*. at 108–112). Neither party disputes whether the promises were "bargained for" by the parties. Because the evidence demonstrates a bargained-for exchange of promises between Plaintiff and Defendant, the Court finds that the Agreement is supported by consideration.

//

1

ii.  <u>Mutual Assent</u>

2        Defendant further contends that the parties did not mutually assent to the terms of the

3   Agreement because Plaintiff erroneously believes that the Agreement was "actually for the

4   right to develop new frequencies that fell within the scope of Kurian's WQCP809 license."

5   (Resp. to Pl.'s MSJ 6:23–7:5).  A meeting of the minds exists when the parties have agreed

6   upon the contract's essential terms. *Certified Fire Prot. Inc. v. Precision Constr. Inc.*, 128 Nev.

7   371, 378, 283 P.3d 250, 255 (2012); *see also Roth v. Scott*, 112 Nev. 1078, 1083, 921 P.2d

8   1262, 1265 (1996).  Under Nevada law, "[m]utual assent is determined under an objective

9   standard applied to the outward manifestations or expressions of the parties." *Alter v. Resort*

10  *Props. of Am.*, 130 Nev. 1148 (2014) (citing *ASP Props. Grp. v. Fard, Inc.*, 35 Cal. Rptr. 3d

11  343, 351, 133 Cal. App. 4th 1257 (Ct. App. 2005)).  "If the outward words and acts of the

12  parties can reasonably be interpreted as acceptance, then mutual assent exists." *Id.*

13       Under the express terms of the Agreement, the parties agreed to Defendant providing

14  substantial services to the leased geographical area, in addition to Defendant leasing Plaintiff's

15  license.  Specifically, the Agreement states:

16       **a. Approved Equipment**. Lessee agrees to use transmitting and other equipment
         that meets the requirements and specifications of Lessor and the FCC as may be
17       adopted and/or modified from time-to-time. Lessee shall ensure that all aspects of
18       equipment installation, operation and maintenance meet these requirements.

19       **b. Construction and substantial service**: Lessee agrees to provide substantial
         service by *providing communication services to 40% of the Population in the*
20       *leased geographical area* using its Leased Channel on or before April 26, 2015 as
21       per FCC rule 47 C.F .R. Part 80.49(a)(3). If Lessee fails to provide substantial
         service, it shall be deemed a material breach of the Lease Agreement and Lessor
22       may use all legal means necessary to enforce compliance.

23  (Spectrum Agreement at 109) (italics added).  Though the Agreement does not explicitly state

24  that Defendant must construct the infrastructure necessary to provide the substantial service,

25  Plaintiff reasonably inferred from the text of the Agreement that Defendant agreed to construct

a system to provide substantial service to 40% of the population in the leased geographical area. *Alter v. Resort Props. of Am.*, 130 Nev. 1148 (2014) ("For a party's conduct to be viewed as a manifestation of his assent, the party must intend to partake in the conduct and 'know[ ] or ha[ve] reason to know that the other party may infer from his conduct that he assents.'") (citing Restatement (Second) of Contracts § 19(2) (1981)).  Moreover, the parties discussed the construction requirement during contract formation.  While negotiating the terms of the Agreement, Kurian explicitly stated that "FCC rules also require the License/Lessee *construct and operate system* . . . . One of the conditions of the license is that at least 40% of the population has to be covered by April 26, 2015." (*See* E-mail from Plaintiff to Patel (May 6, 2014, 6:45 AM), Ex. 5 to Bryston Decl., ECF No. 39-5) (emphasis added).  Patel confirmed, in response, that he is "very familiar with the build out requirements/deadline/etc and many other FCC rules because we deal with them regularly from the NetHertz perspective." (*See* E-mail from Patel to Plaintiff (May 11, 2014, 9:40 AM), Ex. 5 to Bryston Decl., ECF No. 39-5).  Of note, Patel admits, during his deposition, that the Agreement required Defendant to construct the necessary infrastructure to provide substantial service in accordance with FCC guidance. (Depo. of Sanjay Patel ("Patel Depo.") 92:13–22, Ex. 2 to Bryston Decl., ECF No. 39-2). Since there is consideration and mutual assent, the Court finds that the contract is valid.

### iii.  Breach of Contract

Plaintiff asserts that Defendant breached the express terms of the contract as follows: (1) Defendant failed to build out the leased channels; (2) Defendant failed to make timely payments pursuant to the terms of the agreement; (3) Defendant failed to provide Plaintiff with oversights; (4) Defendant failed to allow Plaintiff to inspect its operations; (5) Defendant failed to construct and operate to provide coverage to two-thirds of the population; (6) Defendant failed to operate equipment pursuant to FCC authorization and approval; and (7) Defendant failed to provide engineering studies as per FCC regulation. (Pl.'s MSJ 6:15–24).  In rebuttal,

Defendant claims that it performed his obligations according to the Agreement's terms or otherwise cured any deficiencies. (Resp. to Pl.'s MSJ 7:6–18); (Def.'s MSJ 8:16–10:14).

Under Nevada law, "[a] breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*, 103 Nev. 132, 734 P.2d 1238, 1240 (Nev. 1987). "It is well-established at common law that '[a] breach or non-performance of a promise by one party to a bilateral contract, so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty.'" *Las Vegas Sands, Ltd. Liab. Co. v. Nehme*, 632 F.3d 526, 536 (9th Cir. 2011) (citing Restatement (First) of Contracts § 397).

The evidence demonstrates that Defendant breached a material term of the contract by failing to timely pay its monthly payment. Defendant, in the Agreement, promised to pay Plaintiff "by the first day of each month a fee in the amount of . . . $20,390.00 for the use of the Channels as described herein." (*See* Spectrum Agreement at 109). On February 3, 2016, Plaintiff emailed Defendant, requesting payment. (*See* Emails Regarding Payment, Ex. 4 to Bryston's Decl., ECF No. 39-4). Contrary to Defendant's assertion, the evidence does not show that "all payments were made by SNAPS." Defendant's proffered evidence merely demonstrates that Plaintiff reminded Defendant to submit payment. (*See generally* Table of Payment Problems). Given that timely payment is a material term of the Agreement and Plaintiff provides sufficient evidence to demonstrate that Defendant failed to make payment, the burden shifts to Defendant to establish that a genuine dispute of material fact exists as to whether Defendant paid Plaintiff. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Defendant does not provide any evidence that it paid Plaintiff on February 1, 2016, as is required under the

Agreement, or that it paid Plaintiff later.[2]   Accordingly, the Court grants summary judgment to Plaintiff as to breach of contract.

### B.  Claim 2: Fraud/Misrepresentation

Plaintiff argues that Defendant falsely represented, before and during negotiations, that it would build out the channels in a manner that would allow Defendant to comply with the substantial service requirement. (Pl.'s MSJ 8:15–25); (Reply to Pl.'s MSJ 6:20–23, ECF No. 42).  Defendant, in its own Motion for Summary Judgment, contends that any false assertions made via email before the Agreement are immaterial because the integration clause of the Agreement "supersedes all previous understandings, commitments and representation." (Def.'s MSJ 10:21–11:7).  Even assuming that Defendant falsely represented facts to Plaintiff, Defendant argues that Plaintiff fails to provide any evidence to support a finding that Defendant knowingly misrepresented material facts. (*Id.* 11:7–14).

To state a claim for fraud or intentional misrepresentation, a plaintiff must allege three elements: (1) a false representation by the defendant that is made with either knowledge or belief that it is false or without sufficient foundation; (2) an intent to induce another's reliance; and (3) damages that result from this reliance. *See Nelson v. Heer*, 123 Nev. 217, 163 P.3d 420, 426 (Nev. 2007).  A claim of "fraud or mistake" must be alleged "with particularity." Fed. R. Civ. P. 9(b).  Specifically, a complaint alleging fraud or mistake must include allegations of the time, place, and specific content of the alleged false representations and the identities of the parties involved. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

No genuine dispute of material fact exists as to whether Defendant intended to induce Plaintiff's reliance on his alleged misrepresentation.  Plaintiff simply presents evidence that Defendant falsely affirmed on multiple occasions that it would provide substantial service. (*See*

---

[2] Defendant appears to argue, in its Motion for Summary Judgment, that it cured its untimely payment because it eventually paid Plaintiff. (*See* Def.'s MSJ 9:11–12).  However, Defendant does not provide any evidence demonstrating that it eventually paid Plaintiff or otherwise cured its untimely payment.

Resp. to Def.'s MSJ 9:17–12).  Mr. Patel, on November 2, 2016, informed Plaintiff, "We have ordered the equipment for 6 sites in different locations . . .  Simultaneously, we are lining up installers . . . The equipment is data only for our IoT applications – we should be installing them soon. (Emails Regarding Build Out at 3, Ex. 7 to Bryston Decl., ECF No. 39-7). Additionally, on November 7, 2016, Mr. Patel confirmed "Gear has been ordered and on its way to each site." (*Id*. at 2).  Patel's representations, however, do not demonstrate that Defendant intended to induce Plaintiff's reliance on his statements.  It is equally likely that Defendant misunderstood the scope of the substantial service requirement.  Even construing the evidence in favor of Plaintiff, Plaintiff simply has not demonstrated sufficient evidence that Defendant *intentionally* misrepresented that it would build out the frequency channels.  Given that there is no genuine dispute of material fact as to Defendant's intent to defraud, the Court accordingly grants summary judgment in favor of Defendant as to Plaintiff's fraud/misrepresentation claim.

### C. Claim 4: Breach of Covenant of Good Faith and Fair Dealing

Plaintiff asserts that Defendant breached the implied covenant of good faith and fair dealing by failing to build out the channel systems, which was an established understanding and provision under the Agreement. (Pl.'s MSJ 9:3–22).  Defendant, in response and in its cross Motion for Summary Judgment, contends that Plaintiff fails to demonstrate how Defendant deliberately contravened the intention and spirit of the Agreement since Plaintiff had all the necessary infrastructure and otherwise complied with FCC's substantial service requirement. (Def.'s MSJ 11:24–12:24).

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr. v. Washoe Cty.*, 105 Nev. 913, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205).  To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff

must prove: (1) the existence of a contract between the parties; (2) that the defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the plaintiff's justified expectations under the contract were denied. *See Perry v. Jordan*, 111 Nev. 943, 900 P.2d 335, 338 (Nev. 1995) (citing *Hilton Hotels Corp. v. Butch Lewis Prod., Inc.*, 107 Nev. 226, 808 P.2d 919, 922-23 (Nev. 1991)).

A contractual breach of the implied covenant of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes [sic] the intention and spirit of the contract." *Hilton Hotels*, 808 P.2d at 923-24. This cause of action is different from one for breach of contract because it requires literal compliance with the terms of the contract. *See Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 931 (D. Nev. 2010). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Hilton Hotels Corp.*, 107 Nev. at 234.

Here, no genuine dispute of material fact exists as to whether Defendant deliberately contravened the intention and spirit of the Agreement. There is a valid contract between the parties, as discussed above. (*See generally* Spectrum Agreement). Plaintiff asserts that his purpose in entering into the Agreement was to avoid the costs associated with operating and maintaining the infrastructure to provide substantial service in the geographic areas where Defendant wanted to operate.[3] (Reply to Pl.'s MSJ 8:3–9). The emails between the parties during negotiation confirm that Plaintiff conveyed its intent that Defendant "construct and operate" the channel systems. (*See* E-mail from Plaintiff to Patel (May 6, 2014, 6:45 AM))). Defendant's failure to build out the system contradicted the intent of the Agreement, causing

---

[3] The Court notes that Plaintiff cites to pages in Plaintiff's deposition that do not exist. (*See* Resp. to Def.'s MSJ 10:20–24) (citing to pages 138 and 139 of Kurian's Deposition, when the attached exhibit skips from page 131 to page 192).

Plaintiff to rebuild the infrastructure himself to save his licenses from being revoked by the FCC. (*Id.* 3:9–10).  Given that Plaintiff has met its burden in demonstrating that Defendant breached the implied covenant of good faith and fair dealing, the burden now shifts to Defendant to show that a genuine dispute of material fact exists. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586 (If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists.).

Defendant, however, fails to meet its burden.  In response to Plaintiff's Motion for Summary Judgment, Defendant rebuts that Plaintiff had the necessary infrastructure for the channels before the parties entered into the Agreement and further satisfied the FCC's substantial service requirement himself on April 26, 2015. (Resp. to Pl.'s MSJ 10:11–14); (Def.'s MSJ 12:9–12).  Because Plaintiff owned the necessary infrastructure and satisfied the FCC's requirement himself, Defendant seemingly argues that it did not breach the implied covenant of good faith and fair dealing. (*See id.*).  Plaintiff's compliance, however, has no bearing on whether Defendant breached the implied covenant of good faith by failing to build out the frequency channels.  Regardless of whether Plaintiff ultimately complied with FCC requirements, Defendant does not provide any evidence that a genuine dispute of fact exists as to whether it breached the implied covenant of good faith.  Moreover, the evidence Defendant cites to seemingly does not exist.[4]  The Agreement, which Defendant cites in his Response to Plaintiff's Motion for Summary Judgment, does not state that Plaintiff had existing infrastructure prior to the Agreement. (*See* Resp. to Pl.'s MSJ 10:11–14).  The Court, from its own reading of the evidence, cannot find support for Defendant's broad assertion.

---

[4] As to Defendant's assertion that Plaintiff fulfilled the FCC's substantial service requirement on April 26, 2015, Defendant cites to a non-existent page number in Plaintiff's attached deposition. (*See* Def.'s MSJ 12:12–14) (citing to page 98 of Plaintiff's Deposition when the exhibit of Plaintiff's deposition skips from page 93 to page 99); (*see also* Kurian Depo. Ex. 3 to Matteson Decl., ECF No. 39-3).

1   Accordingly, the Court grants Plaintiff's Motion for Summary Judgment as to the breach of the

2   implied covenant of good faith and fair dealing.[5]

3   ### D. Claim 5: Declaratory Relief

4   Plaintiff additionally requests summary judgment as to his requests for declaratory

5   relief. (Pl.'s MSJ 9:23–10:19).  There are four issues in controversy: (1) whether there is a valid

6   and enforceable agreement between the Plaintiff and Defendant; (2) whether Defendant is

7   entitled to continue to use the subject frequencies; (3) whether the contract is void for fraud in

8   the inducement; and (4) if there is a valid contract, what the respective duties of the parties are.

9   (Compl. ¶ 26).

10   The Court grants Plaintiff declaratory relief as to the first issue—whether there is a valid

11   and enforceable agreement.  As explained above, the Agreement was supported by valid

12   consideration and the parties mutually assented to the terms of the Agreement.  However, the

13   Court denies declaratory relief as to the remaining issues because Plaintiff merely recites the

14   legal standard for declaratory relief in support of its Motion for Summary Judgment.

15   ### E. Claim 6: Injunctive Relief

16   Plaintiff seeks summary judgment as to his claim for injunctive relief. (Pl.'s MSJ 10:7–

17   18).  In its cross-motion, Defendant argues that dismissal of Plaintiff's claim is proper because

18   Plaintiff does not provide any evidence that Defendant is disclosing, or even disclosed, any

19   confidential information. (Def.'s MSJ 13:1–12).  The Court agrees.  Plaintiff devotes a scant

20   paragraph in its Motion for Summary Judgment and cites to one case. (Pl.'s MSJ 10:7–18).

21   Plaintiff merely recites the standard for granting injunctive relief, namely that "he has a

22   reasonable likelihood of success on the merits" because "[i]f Snaps is allowed to continue to

23   _____

24   [5] Though neither party makes this argument, the Court also finds that Defendant's failure to pay, which the Court finds to be a breach of contract, also breaches the implied covenant of good faith and fair dealing.  Plaintiff

25   executed the contract for the purpose of leasing his License in exchange for monthly payment. (Compl. ¶ 5). Failure to pay, therefore, directly opposes Plaintiff's most basic expectation under the Agreement.

1    use the channels in the manner in which they have been, and are allowed to disclose

2    confidential information to Kurian's competitors, Kurian will be irreparably harmed with the

3    FCC and his competitors. (Pl.'s MSJ 10:13–17).  Plaintiff, however, does not provide any

4    evidence that Defendant disclosed confidential information and fails to otherwise rebut

5    Defendant's argument in its response. (*See* Resp. to Def.'s MSJ 11:10–15).  Accordingly, the

6    Court grants Defendant's Motion for Summary Judgment as to Plaintiff's requested injunctive

7    relief.

8        **F.  Defendant's Counterclaim: Breach of Contract**

9           Defendant additionally moves for summary judgment as to its counterclaim that Plaintiff

10   breached the contract by erroneously sending notice via email and not U.S. Mail. (Def.'s MSJ

11   13:15–15:20).  Pursuant to Section 16 of the Agreement, all notices must be sent via U.S. Mail.

12   (*Id*. 14:1–2); (*see also* Agreement at 112) ("All notices shall be in writing sent to the persons

13   and addresses below, unless notified otherwise by such party, and shall be deemed received

14   upon actual receipt (5th or upon the expiration of the fifth (business day after being deposited in

15   the United States) mail, postage prepaid.").  Plaintiff sent an email on January 8, 2019,

16   threatening to terminate the Agreement if Defendant did not cure the purported breaches. (*Id*.

17   13:21–14:2).  Plaintiff's failure to provide notice via U.S. mail, however, is not a material

18   breach. *Calloway v. City of Reno*, 116 Nev. 250, 256, 993 P.2d 1259, 1263 (2000) ("A breach

19   of contract may be said to be a material failure of performance of a duty arising under or

20   imposed by agreement.").  Though not in the specified form of delivery as stated in the

21   Agreement, Plaintiff sent multiple notices of termination to Defendant before its ultimate

22   termination on March 27, 2019. (*See* Emails regarding Termination, Ex. 10 to Bryston Decl.,

23   ECF No. 39-10).  Patel received Plaintiff's notices as indicated by his responses. (*Id*.).

24   Therefore, though not in the specific form as stipulated under the Agreement, Defendant

25

ultimately received notice prior to the final termination on March 27, 2019.  Accordingly, the Court denies Defendant's Motion for Summary Judgment as to its counterclaim.

In sum, the Court grants summary judgment for Plaintiff as to the breach of contract and breach of implied covenant of good faith and fair dealing claim.  The Court grants summary judgment to Defendant as to the fraud/misrepresentation claim and injunctive relief.  Finally, the Court grants declaratory relief that there is a valid and enforceable agreement between Plaintiff and Defendant.

**IV.    CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 38), is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 43), is **GRANTED in part** and **DENIED in part**.

**DATED** this __27__ day of September, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT