1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

4

5

6

7

8

9

| | | |
|---|---|---|
| THOMAS K. KURIAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:19-cv-01757-GMN-EJY |
| vs. | ) | |
| | ) | **ORDER DENYING MOTION IN** |
| SNAPS HOLDING COMPANY, | ) | **LIMINE** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

10      Pending before the Court is Defendant SNAPS Holding Company's Motion in Limine,

11    (ECF No. 148), to which Plaintiff Thomas K. Kurian filed a Response, (ECF No. 153).

12      For the reasons discussed below, the Court DENIES Defendant's Motion.

13    **I.      BACKGROUND**

14      This case arises out of an alleged breach of contract, in which Plaintiff leased its

15    wireless radio frequency license to Defendant.  Plaintiff alleged that Defendant failed to

16    perform as agreed, (Compl., ECF No. 1); Defendant filed counterclaims against Plaintiff, (Am.

17    Answer ¶¶ 22–70, ECF No. 30).  The parties filed cross motions for summary judgment which

18    this Court granted in part and denied in part as to each party. (Order Granting in Part and

19    Denying in Part, ECF No. 55).  In preparation for trial, Defendant has filed the instant Motion

20    in Limine.

21    **II.      LEGAL STANDARD**

22      In general, "[t]he court must decide any preliminary question about whether . . .

23    evidence is admissible." Fed. R. Evid. 104(a).  In order to satisfy the burden of proof for

24    Federal Rule of Evidence ("FRE") 104(a), a party must show that the requirements for

25    admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483

1  U.S. 171, 175 (1987) ("We have traditionally required that these matters [regarding

2  admissibility determinations that hinge on preliminary factual questions] be established by a

3  preponderance of proof.").

4       "Although the [FRE] does not explicitly authorize in limine rulings, the practice has

5  developed pursuant to the district court's inherent authority to manage the course of trials."

6  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing FRE 103(c)).  In limine rulings "are

7  not binding on the trial judge, and the judge may always change his mind during the course of a

8  trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *see also Luce*, 469 U.S. at 41

9  (noting that limine rulings are always "subject to change," especially if the evidence unfolds in

10  an unanticipated manner).  To exclude evidence on a motion in limine, the evidence must be

11  "clearly inadmissible on all potential grounds." *Ind. Ins. Co v. Gen. Elec. Co.*, 326 F. Supp. 2d

12  844, 846 (N.D. Ohio 2004).  "Unless evidence meets this high standard, evidentiary rulings

13  should be deferred until trial so that questions of foundation, relevancy and potential prejudice

14  may be resolved in the proper context." *Hawthorne Partners v. AT & T Tech, Inc.*, 831 F.Supp.

15  1389, 1400 (N.D. Ill. 1993).  This is because although rulings on motions in limine may save

16  "time, costs, effort and preparation, a court is almost always better suited during the actual trial

17  to assess the value and utility of evidence. *Wilking v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218

18  (D. Kan. 2007).

19  **III.    DISCUSSION**

20       Defendant asks the Court to (1) preclude Plaintiff from presenting any evidence of

21  damages, (Motion in Limine ("MIL") 16:20–25), (2) issue an adverse inference instruction

22  allowing the Court to infer that Plaintiff destroyed evidence pertaining to a "side agreement"

23  between Mr. Kurian and SNAPS, (*id.* 20:19–26), and (3) grant permission to call Mr. Bryson,

24  Plaintiff's attorney, as a witness, (*id.* 23:2–8).

25

### A. Exclusion of Evidence of Damages

Defendant's Motion in Limine seeks to preclude Plaintiff from presenting any evidence of damages in this case. (MIL 23:10–15).  Defendant bases this request on an assertion that Plaintiff mitigated his damages by selling a portion of the licensed spectrum for an amount that exceeds his alleged damages in this case. (*Id.* 16:21–23).  Because Plaintiff allegedly destroyed evidence and engaged in "bad faith efforts to conceal this sale from SNAPS and the Court," Defendant moves to prevent Plaintiff from presenting any evidence of his damages at trial. (*Id.* 23:10–15).

Defendant has not cited any legal authority justifying this request.  Whether Plaintiff is entitled to damages is a question of fact to be decided at trial.  Defendant essentially asks the Court to prematurely resolve the question of whether Plaintiff is entitled to damages by excluding any evidence of Plaintiff's damages at trial.  Motions in limine are motions, "whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce*, 469 U.S. at 40 n.2.  These motions are extensions of the Court's authority to manage trials under Rule 103(c) of the Federal Rules of Evidence, and as a result, they are limited to evidentiary matters. *Id.* at 41 n.4.  Resolution of questions of fact before trial is not the function of motions in limine, but rather that of motions for summary judgment. *See Ernst v. HB Aspen, Inc.*, 2008 WL 11337009, at *12 (C.D. Cal. Feb. 4, 2008).  The Court therefore DENIES Defendant's motion to preclude Plaintiff from presenting evidence of damages.

### B. Spoliation of Evidence

Defendant next requests that the Court issue an adverse inference instruction, allowing the Court to infer that the destroyed evidence would have demonstrated Plaintiff's bad faith and thus that a "side agreement" existed between Plaintiff and Defendant. (MIL 23:16–18). Defendant argues that, because Plaintiff allegedly destroyed evidence pertaining to his

agreement with PTC-220, the Court is required to "draw an inference that a side agreement between Mr. Kurian and SNAPS, whereby Mr. Kurian would sublease the spectrum from SNAPS in order to maintain FCC compliance, did exist, but was destroyed by Mr. Kurian along with all of the other adverse evidence he has destroyed in this case." (*Id.* 20:20–24).[1] Defendant further claims that its testimony about a "side agreement" between Plaintiff and Defendant should be given an inference of truth at trial. (*Id.* 20:25).  Lastly, Defendant argues that the spoliation of evidence "weighs in favor of liberal admission of damages evidence at trial, on top of punitive damages." (*Id.* 20:25–26).

"A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).  This includes the ability to draw an "adverse inference from the destruction or spoliation against the party or witness responsible for that behavior." *Id.*  As the Ninth Circuit has explained, adverse inference instructions are supported by the rationale that "a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document." *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991).  This rationale for adverse inferences supports drawing an adverse inference against the spoliating party *as to the contents of the destroyed evidence*.

Defendant asks the Court to draw an inference that, because Plaintiff allegedly destroyed specific evidence relating to the PTC-220 agreement, Plaintiff also destroyed other unrelated evidence.  Defendant cites no case law supporting the notion that a court may draw such an

---

[1] On September 16, 2024, Magistrate Judge Youchah granted an adverse inference that the sale of a portion of Plaintiff's spectrum was not wholly unrelated to the spectrum that he contends was leased to Defendant.  Defendant's requested adverse inference in this Motion in Limine is distinct from the adverse inference that Judge Youchah granted; while Judge Youchah's adverse inference pertains to the evidence that was allegedly destroyed, Defendant asks the Court here to grant an adverse inference that Plaintiff destroyed other evidence.  The Court thus considers this request for an adverse inference separately.

1   inference.  Without deciding whether Defendant has established the elements required to

2   impose spoliation sanctions, the Court concludes that Defendant is seeking an inappropriate

3   sanction for spoliation.  The proper sanction for spoliation of evidence is an adverse inference

4   against the spoliating party that if the destroyed evidence was available, it would be against the

5   destroying party's interests.  The Court therefore denies Defendant's request for an adverse

6   inference that Plaintiff also destroyed unrelated evidence.

7         Defendant also seeks a sanction for Plaintiff's spoliation granting an "inference of truth"

8   on its testimony about the existence of an "alleged side agreement" in which Mr. Kurian would

9   sublease the spectrum from SNAPS in order to maintain FCC compliance.  For the reasons

10  explained above, the Court finds that this is not an appropriate sanction for spoliation and

11  declines to impose this sanction.

12        Lastly, Defendant requests "maximum punitive damage and a relaxed standard for

13  admission of evidence of damage at trial." (MIL 23:18–20).  Under Ninth Circuit precedent,

14  appropriate sanctions for spoliation of evidence include excluding evidence and giving an

15  adverse inference instruction. *See, e.g.*, *Glover*, 987 F.3d at 1417 (adverse inference); *Unigard*

16  *Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 369 (9th Cir. 1992)

17  (exclusion of evidence).  When spoliation is particularly egregious, courts may grant dismissal

18  or default. *See, e.g.*, *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958, 960–63 (9th Cir. 2006)

19  (affirming dismissal against party for bad-faith destruction of relevant evidence).  Defendant's

20  requested sanctions are not typically granted for spoliation, and Defendant cites no support for

21  its proposed sanctions.  Thus, the Court rejects this request.

22        Defendant's second request regarding spoliation sanctions is therefore DENIED.

23  **C. Calling Mr. Bryson as a Witness**

24        Lastly, Defendant requests that the Court permit it to call Mr. Bryson, Plaintiff's

25  attorney, as a witness, "should any factual disputes arise regarding Mr. Bryson's knowledge of

the Purchase Agreement with PTC-220." (MIL 23:21–23).  Defendant explains that Mr.

Bryson's testimony is relevant, because it is important to determine whether Plaintiff

knowingly concealed the Purchase Agreement with PTC-220, and whether he intentionally

mislead Defendant and this Court regarding the transaction with PTC-220. (*Id.* 21:14–17).

Plaintiff argues that Mr. Bryson was unaware of any agreement between PTC-220 and Mr.

Kurian until July of 2023, and thus cannot offer personal knowledge other than what he has

previously stated in his declarations. (*Id.* 7:21–22; 8:28; 9:1).

Under the Federal Rules of Evidence Rule 403, evidence may be excluded if its

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury.  The Nevada Rules of Professional Conduct provide that an

attorney shall not be an advocate in a case in which the attorney will need to testify on behalf of

his client because of the potential prejudicial effect. Nev. Rules of Prof. Conduct, Rule 3.7.

Rule 3.7 states in relevant part:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a

   necessary witness unless:

   (1) The testimony relates to an uncontested issue,

   (2) The testimony relates to the nature and value of legal services rendered to the

      case; or

   (3) Disqualification of the lawyer would work substantial hardship on the client.

The testimony in this case is not uncontested.  Defendant argues that no other witness

can provide the same insight into the communications between Plaintiff and his counsel

regarding the Purchase Agreement and the strategy to conceal its existence. (MIL 22:4–7).

Defendant further explains that this information relates to whether Mr. Kurian engaged in bad

faith by concealing the Purchase Agreement, which is probative as to Defendant's defenses and

counterclaims relating to mitigation of damages and spoliation of evidence. (*Id.* 22:15–18).

Whether Mr. Bryson knew about the Purchase Agreement and whether Mr. Bryson and Mr. Kurian had a strategy to conceal its existence are material issues as to whether Mr. Kurian acted in bad faith.  But the information Defendant is seeking to elicit is available through cross-examination of the Plaintiff or the PTC-220 representative with knowledge about the Purchase Agreement and the communications between Mr. Kurian and PTC-220.  Finally, mandating the removal of Plaintiff's attorney would be a severe hardship on Plaintiff as trial is set to commence. *See Tracey v. American Family Mut. Ins. Co.*, 2010 WL 3766949, at \*8 (D. Nev. Sept. 14, 2010) (excluding testimony from a party's attorney because other witnesses were available to testify on the same issues and removing the party's attorney would impose a hardship the late stage of litigation); *see also Tate v. University Medical Center of Southern Nevada*, 2016 WL 520951, at \*3 (D. Nev. Feb. 5, 2016) (same).

Because the Court finds that the information Defendant is seeking to obtain from Plaintiff's attorney can be solicited from other sources, the Court DENIES Defendant's motion for permission to call Mr. Bryson as a witness.  However, the testimony may become admissible depending on the specific information provided by the parties and the Court may entertain the issue again if requested to do so.

### IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion in Limine, (ECF No. 148), is **DENIED.**

**DATED** this __16__ day of September, 2024.

_____
Gloria M. Navarro, District Judge
United States District Court